UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RALPH EDWARD STEWART,<br><br>        Petitioner,<br><br>   v.<br><br>ERIC ARNOLD,<br><br>        Respondent. | No. 2:16-cv-954 TJN GGH<br><br>FINDINGS AND RECOMMENDATIONS |

*INTRODUCTION AND SUMMARY*

Petitioner is a state prisoner proceeding pro se with a petition for a writ of habeas corpus pursuant to 28 U.S.C. section 2254. ECF No. 1. Petitioner was originally tried, convicted and sentenced by the Sacramento County Superior Court for three counts of Second Degree Robbery. The sentencing was enhanced by the jury's finding of five prior serious felony convictions and two strike allegations. The trial court sentenced defendant to 75 years to life plus 30 years. Lodged Document (Lod. Doc) No. 4 at 1. The California Court of Appeal, however, reversed the findings on the four prior federal convictions, and remanded to the trial court for resentencing or, at the prosecutor's election, for retrial on the reversed prior convictions, and affirmed the trial court's decision in all other respects. Lod. Doc. No. 5. The prosecutor demurred further prosecution, and the trial court thereafter resentenced petitioner to a determinate sentence of 19 years. Lod. Doc. No. 7.

1

Petitioner challenges his conviction for the three robbery counts. ECF No. 1. The matter was put at issue by Respondent's Answer, ECF No. 14, to which petitioner has lodged a traverse. ECF No. 16. Petitioner seeks relief on the grounds that the court erred in (1) admitting at the guilt phase court documents reflecting prior convictions, ECF No. 1 at 6, (2) barring the testimony of petitioner's sister concerning his mental health, id. at 12, and (3) based on ineffective assistance of counsel (related to Claim 1). Id. at 15. Apparently, the factual statements on guilty plea underlying the prior federal convictions were utilized as evidence of a common plan or intent vis-à-vis the challenged convictions.

For the reasons that follow, this petition should be denied.

*FACTUAL BACKGROUND*

As the Third District Court of Appeal summarized, the facts underlying the challenged convictions, found at People v Stewart, 2015 WL 4366437 (Cal. App. 2015), are as follows.

*June 6 Robbery*

On June 6, 2011, Karissa Moore was working as a teller at the U.S. Bank in Citrus Heights when defendant approached her and said, "This is a robbery. Give me your 100s and 50s." Defendant leaned very close to Moore's face and looked into her eyes. She was intimidated and moved a step back. He asked Moore to put the money in a case he laid out at the teller station. Moore gave him her fifties; he then asked for twenties, which she gave as well. Defendant left with about $2,000.

Moore described defendant as a large African-American man who was about 6' 2" to 6' 3" tall, 250 pounds and about 35 years old. She was intimidated by his size. He wore a black or dark fisherman's hat, a large coat, a black shirt, and black pants.

Aresha Auzenne, another teller at the bank, saw Moore silently remove money from her drawer and slide it to defendant, who then told Moore, "And your 20s too." Auzenne described him as a tall African-American man with a "husky" build and wearing a "fisherman's" hat and a large jacket.

*June 13 Robbery*

On June 13, 2011, Morgan Young was working as a teller at a U.S. Bank in Rancho Cordova. Defendant, who was waiting in line, walked up, put his hand on the teller window, and said, "This is a robbery. Give me your 100s, 50s and 20s." Young replied, "Excuse me?" Defendant reiterated his demand. Young gave defendant a packet of money containing a dye pack and a tracker. Defendant ripped it apart, exposing the dye pack and tracker. She then gave defendant all of the twenties in her drawer. Defendant responded, "Give me your 100s and 50s."

Young pulled out the twenties from her second drawer and told defendant that she did not have any hundreds. She offered tens to defendant. He said nothing, took the $800 to $1,000 in cash, and walked out the door.

Young's coworker, Matthew Loiseaux, heard Young say, "Lock the door. I was robbed," as defendant ran out the door. Loiseaux, who had a good view of the robber, described him as a large, African-American male.

*July 2 Robbery*

Lauren Rockwell was a teller at the U.S. bank in Rancho Cordova on July 2, 2011. She was at her closed window counting deposits when she looked up to see defendant in front of her; she recognized him as the same man who robbed the bank a few weeks prior. She described him as tall, very big, and wearing a ball cap and a "tourist-type" button up shirt that was cream colored with green palm trees.

Rockwell froze when she saw defendant. He approached her window but backed off a couple of steps when a coworker told him that Rockwell's window was closed. Defendant then rushed to Rockwell's window. Reaching into his waistband, defendant told her to give him all the money. Rockwell, who thought defendant was reaching for a gun, was scared. She pushed the money, about $1,000, towards defendant. Defendant took the money and left the bank.

Young, who was again working as a teller that day, saw defendant walk into the bank. This time he wore a green baseball cap, but had the same shirt and glasses he wore on the June 13 robbery. The assistant manager walked up to defendant and asked if he could help; defendant said, "No, I need to cash a check." When Young saw defendant rob Rockwell, she pulled the alarm.

When defendant was arrested, he was wearing a silver and gold-toned watch and copper, wire-rimmed glasses. Young identified the watch and glasses as being worn by defendant during the robberies.

*Prior Strike and Felony Allegations*

A January 24, 1994, federal plea agreement was admitted as evidence at trial. In the agreement, defendant admitted that on four separate occasions he entered a federally insured financial institution, and robbed a teller of money by "making a verbal demand." He also understood that he was pleading to "unarmed bank robbery."

The information alleged five prior strike and serious felony convictions: the four federal robbery convictions and a 2003 conviction for robbery. At the bifurcated hearing on the nature of the priors, the prosecution presented separate packets for the federal priors and the state robbery conviction.

People's Exhibit 45B contained the judgment in federal case No. CR-93-0609-MHP, defendant's guilty plea and application to plead guilty in that case, and a complaint in federal case No. 3-93-733-PJH. The judgment states that defendant was convicted by a guilty plea of four counts of unarmed bank robbery. (18

3

> U.S.C. § 2113(a).) In the plea agreement, defendant pleaded guilty to counts one through four of the indictment, each of which charged him with "unarmed bank robbery." Defendant's guilty plea admitted as facts that he entered four separate federally insured financial institutions and robbed a teller of a specific amount of money by "making a verbal demand." In the application to plead guilty, defendant admitted that in each count he "enter[ed] the bank and approached [the] teller and demanded money." The complaint alleged three separate bank robberies in which defendant, by "force, violence and intimidation," robbed a teller at each of the three banks.
>
> People's Exhibit 46A included defendant's change of plea hearing, where he pleaded no contest to the prior 2003 California robbery.
>
> The jury sustained all five prior conviction allegations. The trial court found the five priors were serious and violent felonies and strikes.

People v. Stewart at *1-3.

The undersigned adds a bit of history to the above rendition in that the "what introduced" and the "when introduced" and the "for which purpose introduced" of the prior federal bank robbery convictions is not clear. The fact of the prior federal convictions for sentencing purposes was bifurcated. RT 6. However, the prosecution received permission to use the prior convictions themselves for impeachment purposes if petitioner testified. RT 10. The reference to the prior convictions being bank robberies was to be expunged, and the impeachment would consist only of the fact of a conviction for a crime of moral turpitude. RT 11. Petitioner did not testify.

There was a third possible introduction of prior criminal history pursuant to the prior misconduct rules of Cal. Evidence Code 1011(b). Prior misconduct, although generally inadmissible, was admissible and relevant to prove, *inter alia*, plan, knowledge, and absence of mistake. CT 96. The prosecutor sought to admit this evidence, and the court agreed, but ruled that only petitioner's factual statement of guilt for the prior federal bank robbery convictions would come in—not the convictions themselves. RT 33-34. The evidence was admitted at RT 154-155 (mistakenly referred to as section 1104 evidence) in the form of a sanitized exhibit, 45(a). No objection was made to this exhibit, nor was an objection made to the court's prior ruling at RT 34. The introduction of this prior misconduct evidence is the issue raised by petitioner, and is the default referenced above by the Court of Appeal.

////

*AEDPA STANDARDS*

The statutory limitations of federal courts' power to issue habeas corpus relief for persons in state custody is provided by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). The text of § 2254(d) states:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
>
> (1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

For purposes of applying § 2254(d)(1), clearly established federal law consists of holdings of the United States Supreme Court at the time of the last reasoned state court decision. Thompson v. Runnels, 705 F.3d 1089, 1096 (9th Cir.2013) *citing* Greene v. Fisher, 565 U.S.34,35-36 (2011); Stanley v. Cullen, 633 F.3d 852, 859 (9th Cir.2011) *citing* Williams v. Taylor, 529 U.S. 362, 405-406 (2000). Circuit precedent may not be "used to refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that th[e] [Supreme] Court has not announced." Marshall v. Rodgers, 569 U.S. 58, 64 (2013) *citing* Parker v. Matthews, 567 U.S. 37, 48 (2012). Nor may it be used to "determine whether a particular rule of law is so widely accepted among the Federal Circuits that it would, if presented to th[e] [Supreme] Court, be accepted as correct. Id.

A state court decision is "contrary to" clearly established federal law if it applies a rule contradicting a holding of the Supreme Court or reaches a result different from Supreme Court precedent on "materially indistinguishable" facts. Price v. Vincent, 538 U.S. 634, 640 (2003). Under the "unreasonable application" clause of § 2254(d)(1), a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case. Lockyer v. Andrade, 538 U.S. 63, 75 (2003); Williams, 529 U.S. at 413; Chia v. Cambra, 360 F.3d 997, 1002

5

(9th Cir.2004). In this regard, a federal habeas court "may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Williams, 529 U.S. at 412. See also Schriro v. Landrigan, 550 U.S. 465, 473 (2007); Lockyer, 538 U.S. at 75 (it is "not enough that a federal habeas court, in its independent review of the legal question, is left with a 'firm conviction' that the state court was 'erroneous.' ". "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington v. Richter, 562 U.S. 86, 101 (2011) *quoting* Yarborough v. Alvarado, 541 U.S. 652, 664 (2004). Accordingly, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Harrington, 562 U.S. at 103.

The court looks to the last reasoned state court decision as the basis for the state court judgment. Stanley, 633 F.3d at 859; Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir.2004). If the last reasoned state court decision adopts or substantially incorporates the reasoning from a previous state court decision, this court may consider both decisions to ascertain the reasoning of the last decision. Edwards v. Lamarque, 475 F.3d 1121, 1126 (9th Cir.2007) (en banc).

"[Section] 2254(d) does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.' " Harrington, 562 U.S. at 100. Rather, "[w]hen a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." Id. at 784-85. This presumption may be overcome by a showing "there is reason to think some other explanation for the state court's decision is more likely." Id. at 785 *citing* Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991). Similarly, when a state court decision on a petitioner's claims rejects some claims but does not expressly address a federal claim, a federal habeas court must presume, subject to rebuttal, that
////

the federal claim was adjudicated on the merits. Johnson v. Williams, 568 U.S. 289, 292-293 (2013).

When it is clear, however, that a state court has not reached the merits of a petitioner's claim, the deferential standard set forth in 28 U.S.C. § 2254(d) does not apply and a federal habeas court must review the claim de novo. Stanley, 633 F.3d at 860; Reynoso v. Giurbino, 462 F.3d 1099, 1109 (9th Cir.2006); Nulph v. Cook, 333 F.3d 1052, 1056 (9th Cir.2003).

The state courts need not have cited to federal authority, or even have indicated awareness of federal authority in arriving at their decision. Early v. Packer, 537 U.S. 3, 8 (2002). Where the state court reaches a decision on the merits but provides no reasoning to support its conclusion, a federal habeas court independently reviews the record to determine whether habeas corpus relief is available under § 2254(d). Stanley, 633 F.3d at 860; Himes v. Thompson, 336 F.3d 848, 853 (9th Cir.2003). "Independent review of the record is not de novo review of the constitutional issue, but rather, the only method by which we can determine whether a silent state court decision is objectively unreasonable." Himes, 336 F.3d at 853. Where no reasoned decision is available, the habeas petitioner still has the burden of "showing there was no reasonable basis for the state court to deny relief." Harrington, 562 U.S. at 98.

A summary denial is presumed to be a denial on the merits of the petitioner's claims. Stancle v. Clay, 692 F.3d 948, 957 & n. 3 (9th Cir.2012). While the federal court cannot analyze just what the state court did when it issued a summary denial, the federal court must review the state court record to determine whether there was any "reasonable basis for the state court to deny relief." Harrington, 562 U.S. at 98. This court "must determine what arguments or theories ... could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." Id. at 786. "Evaluating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." Id. Emphasizing the stringency of this standard, which "stops short of imposing a complete bar of federal court relitigation of claims already rejected in state court proceedings[,]" the Supreme

Court has cautioned that "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." Id. The petitioner bears "the burden to demonstrate that 'there was no reasonable basis for the state court to deny relief.' " Walker v. Martel, 709 F.3d 925, 939 (9th Cir. 2013) *quoting* Harrington, 562 U.S. at 98.

*DISCUSSION*

A. Claim 1 and Claim 3

Claim 1 one of the petition is based upon petitioner's allegation that the trial court's admission of prior convictions under federal law to show common knowledge, plan or intent was erroneous. Claim 3 asserts that defense counsel was ineffective for not objecting to the limited use of the prior convictions.

The Court of Appeal held:

> Defendant contends the trial court erred in admitting the four federal bank robberies as evidence of prior uncharged misconduct. We disagree.
> Defendant did not object to admitting the federal priors as uncharged misconduct evidence. On appeal, he claims that he objected to the evidence when counsel raised a concern, at the in limine hearing, that defendant's mental state was "unsettled" when he entered the guilty pleas to the federal charges in 1994.
>
> This does not preserve his claim on appeal. The failure to raise a timely and specific objection to the admission of evidence forfeits the objection on appeal. (People v. Doolin (2009) 45 Cal.4th 390, 438.)

People v. Stewart at *3.

Procedural defaults will bar a review on the merits of a claim:

 "A federal habeas court will not review a claim rejected by a state court if the decision of [the state] court rests on a state law ground that is independent of the federal question and adequate to support the judgment.' " Kindler, 558 558 U.S., at ——, 130 S.Ct, at 615 (quoting Coleman v. Thompson, 501 U.S. 722, 729, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991)). The state-law ground may be a substantive rule dispositive of the case, or a procedural barrier to adjudication of the claim on the merits. See Sykes, 433 U.S., at 81–82, 90, 97 S.Ct. 2497, 53 L.Ed.2d 594.
 * * *
To qualify as an "adequate" procedural ground, a state rule must be "firmly established and regularly followed." Kindler, 558 558 U.S., at ——, 130 S.Ct., at 618 (internal quotation marks omitted).FN4 [omitted] "[A] discretionary state

8

procedural rule," we held in Kindler, "can serve as an adequate ground to bar federal habeas review." Ibid. A "rule can be firmly established 'and regularly followed,' " Kindler observed, "even if the appropriate exercise of discretion may permit consideration of a federal claim in some cases but not others." Ibid. California's time rule, although discretionary, meets the "firmly established" criterion, as Kindler comprehended that requirement. The California Supreme Court, as earlier noted, framed the timeliness requirement for habeas petitioners in a trilogy of cases. See supra, at 3 [citing Clark, Robbins, and In re Gallego, 18 Cal. 4th 825, 18 Cal.4th 825, 77 Cal.Rptr.2d 132, 959 P.2d 290 (1998). Those decisions instruct habeas petitioners to "alleg[e] with specificity" the absence of substantial delay, good cause for delay, or eligibility for one of four exceptions to the time bar. Gallego, 18 Cal.4th, at 838, 77 Cal.Rptr.2d 132, 959 P.2d, at 299; see Robbins, 18 Cal.4th, at 780, 77 Cal.Rptr.2d 153, 959 P.2d, at 317.

Walker v. Martin, 562 U.S. 307, 315-317 (2011) (abrogating Townsend v. Knowles, 562 F.3d 1200 (9th Cir. 2009)).

The Ninth Circuit has recognized and applied California's contemporaneous objection rule-- that a criminal defendant must make a timely objection to the admission of evidence or other objectionable item at trial in order to preserve a claim challenging that evidence/statement on appeal-- as grounds for denying a federal habeas corpus claim under the doctrine of procedural default where there was a failure to object at trial. See, e.g., Xiong v. Felker, 681 F.3d 1067, 1075 (9th Cir. 2012); Fairbanks v. Alaska, 650 F.3d 1243, 1256 (9th Cir. 2011); Inthavong v. Lamarque, 420 F.3d 1055, 1058 (9th Cir. 2005); Paulino v. Castro, 371 F.3d 1083, 1092–1093 (9th Cir. 2004); Melendez v. Pliler, 288 F.3d 1120, 1125 (9th Cir. 2002) (citing Garrison v. McCarthy, 653 F.2d 374, 377 (9th Cir. 1981)); Vansickel v. White, 166 F.3d 953, 957 (9th Cir. 1999); Bonin v. Calderon, 59 F.3d 815, 842–843 (9th Cir. 1995). Under the contemporaneous objection rule, California courts broadly construe the sufficiency of objections that preserve issues for appellate review, focusing on whether the trial court had a reasonable opportunity to rule on the merits of the objection. Melendez, 288 F.3d at 1125.

Despite petitioner's protestations to the contrary in his petition, the appellate court found, and the undersigned agrees, that no objection was raised to the Section 1101(b) "factual statement of guilt" evidence. Defense counsel raised a "concern" about the reliability of the evidence which she hoped to impeach using petitioner's relative who was going to testify about petitioner's state

9

of mind. RT 34. The trial court ruled the evidence admissible subject to later possible testimony from the relative. RT 34-35. This "concern" does not state an objection. Therefore, petitioner's "straight" claim of erroneous evidence admission is procedurally defaulted.

Petitioner does not raise cause and prejudice arguments which might excuse a procedural default. The undersigned will not review that issue here.

In any event, even if reviewed on the merits of the claim, the asserted admission of prejudicial evidence is not actionable in federal habeas corpus. The undersigned has discussed this issue before in its decision rendered in <u>Sears v. Barnes</u>, 2014 WL 496773 *5-6 (E.D.Cal. 2014):

> A federal writ of habeas corpus is not available for alleged error in the interpretation or application of state law. <u>Wilson v. Corcoran</u>, 562 U.S. [1, 5], 131 S.Ct. 13, 16, 178 L.Ed.2d 276 (2010). Absent some federal constitutional violation, a violation of state law does not provide a basis for habeas relief. Id. A petitioner may not "transform a state-law issue into a federal one" merely by asserting a violation of the federal constitution. <u>Langford v. Day</u>, 110 F.3d 1380, 1389 (9th Cir.1997). Rather, petitioner must show that the decision of the California Court of Appeals "violated the Constitution, laws, or treaties of the United States**."** <u>Little v. Crawford</u>, 449 F.3d 1075, 1083 (9th Cir.2006) (*quoting* <u>Estelle</u> ]v. McGuire, 502 U.S. 62] at 68 [1991]). Accordingly, to the extent petitioner's due process claims are based on alleged violations of state law governing the admissibility of evidence, they should be rejected.
>
> A state court's evidentiary ruling, even if erroneous, is grounds for federal habeas relief only if it renders the state proceedings so fundamentally unfair as to violate due process. <u>Holley v. Yarborough</u>, 568 F.3d 1091, 1101 (9th Cir.2009); <u>Jammal v. Van de Kamp</u>, 926 F.2d 918, 919 (9th Cir.1991). Even so, as the Ninth Circuit has observed:
>
>> The Supreme Court has made very few rulings regarding the admission of evidence as a violation of due process. Although the Court has been clear that a writ should be issued when constitutional errors have rendered the trial fundamentally unfair (citation omitted), it has not yet made a clear ruling that admission of irrelevant or overtly prejudicial evidence constitutes a due process violation sufficient to warrant issuance of the writ.
>
> <u>Holley</u>, 568 F.3d at 1101. Therefore, "under AEDPA, even clearly erroneous

admissions of evidence that render a trial fundamentally unfair may not permit the grant of federal habeas corpus relief if not forbidden by 'clearly established Federal law,' as laid out by the Supreme Court." Id. On the basis of these authorities, the state court's rejection of petitioner's due process claim here does not support federal habeas relief under AEDPA because the admission of evidence at trial regarding petitioner's prior assault on Washburn did not violate any clearly established federal law. Id.

Similarly, the United States Supreme Court "has never expressly held that it violates due process to admit other crimes evidence for the purpose of showing conduct in conformity therewith, or that it violates due process to admit other crimes evidence for other purposes without an instruction limiting the jury's consideration of the evidence to such purposes." Garceau v. Woodford, 275 F.3d 769, 774 (9th Cir.2001), overruled o.g. Woodford v. Garceau, 538 U.S. 202, 123 S.Ct. 1398, 155 L.Ed.2d 363 (2003). See also Alberni v. McDaniel, 458 F.3d 860, 863 (9th Cir.2006). In fact, the Supreme Court has expressly left open this question. See Estelle v. Mcguire, 502 U.S. 62, 75 n. 5, 112 S.Ct. 475, 484 n. 5, 116 L.Ed.2d 385 ("Because we need not reach the issue, we express no opinion on whether a state law would violate the Due Process Clause if it permitted the use of 'prior crimes' evidence to show propensity to commit a charged crime"). See also Mejia v. Garcia, 534 F.3d 1036, 1046 (9th Cir.2008) (holding that state court had not acted objectively unreasonably in determining that the propensity evidence introduced against the defendant did not violate his right to due process); Alberni, 458 F.3d at 863–67 (denying the petitioner's claim that the introduction of propensity evidence violated his due process rights under the Fourteenth Amendment because "the right [petitioner] asserts has not been clearly established by the Supreme Court, as required by AEDPA"); United States v. LeMay, 260 F.3d 1018 (9th Cir.2001) (Fed.R.Evid. 414, permitting admission of evidence of similar crimes in child molestation cases, under which the test for balancing probative value and prejudicial effect remains applicable, does not violate the due process clause). In short, because the state court's rejection of petitioner's due process claim is not contrary to any United States Supreme Court precedent, petitioner is not entitled to federal habeas relief with respect to this claim.

See also Delgado v. Biter, 2015 WL 1469337 *15-16 (E.D.Cal. 2015)(erroneous state court evidentiary ruling actionable in habeas only if it results in a proceeding so fundamentally unfair it violates due process). No Supreme Court AEDPA case has held that the admission of prejudicial evidence, here prior misconduct, violates the Due Process Clause of the Federal Constitution.

11

Petitioner argues in the traverse for "cause and prejudice" to excuse the default; the substance of that argument is met within the ineffective assistance of counsel section.

Turning to Claim 3, petitioner asserts ineffective assistance of his trial counsel, but is confused as to what was admitted.[1] At times, in the Petition and Traverse, petitioner seems to understand that only the factual statements of guilt were admitted, but then vociferously argues that evidence of the "convictions" was improper. He also appears to argue that the probative value of the evidence, whatever it was, was insufficient for the purposes of Section 1101(b).

The Appellate Court rejected the claim that defense counsel's failure to object to the redacted documents was a tactical decision and went on to determine that evidence of petitioner's conduct during the robberies being tried was so clear that introduction of the challenged evidence of federal prior convictions were only minimally prejudicial and insufficient to require a reversal, expressly applying the United States Supreme Court standard from Strickland v. Washington, 466 U.S. 668, 687-688, 691-692 (1984). People v. Stewart at *3.

In addressing a petition for a writ of habeas corpus alleging ineffective assistance of counsel, this court must consider two factors: (1) whether counsel's performance was shown to be so deficient that she was not functioning as the "counsel" guaranteed by the Sixth Amendment, Strickland v. Washington, 466 U.S. 668, 687 (1984), her performance fell below an objective standard of reasonableness and cannot be explained to be the result of reasonable professional judgment under the circumstances, id. at 688; and (2) counsel's errors were so egregious that they deprived defendant of a fair trial. Id. See also Harrington v. Richter, 562 U.S. 86, 88 (2011), Lowrey v. Lewis, 21 F.3d 344, 346 (9th Cir. 1994). This court must be highly deferential to guard against the temptation to second guess counsel's decisions. Strickland, *supra*, at 689. Thus the court begins with a "strong presumption" that counsel's performance came within the '"wide range' of reasonable professional assistance." Richter, *supra*, at 104 S.Ct. *quoting* Strickland at 687. The court must both give the attorney the benefit of the doubt, but it must also ' "entertain

---

[1] Respondent correctly does not argue procedural default for the ineffective assistance claim. The Court of Appeal did not find a default for this claim. It is more economical of resources to simply review prejudice under Strickland.

12

the range of possible reasons [defense] counsel may have had for proceeding as [she] did.' " Cullen v. Pinholster, 563 U.S. 170, 196 (2011).

First, as respondent argues, petitioner has not made out any case that his counsel was ineffective for not objecting, i.e., that evidence of uncharged misconduct to show evidence of a common scheme or plan, would have been ruled inadmissible under state law. Petitioner simply argues for the most part that because the evidence was harmful to his defense, counsel should have objected. The "extra" evidence of common scheme was in fact probative to demonstrate petitioner's intent to rob for the convictions at issue, or for knowledge and plan, as opposed to petitioner's actions simply being a "request-without-force" made to bank employees. Thus, the court cannot find performance outside the "wide range" of reasonable professional performance discussed in Richter and Cullen.

Assuming, however, that defense counsel's performance *was* deficient within the Strickland definition of that term, neither can the court disagree with the findings of the appellate court that "[t]he case against [petitioner] was compelling and he cannot demonstrate that the introduction of the federal priors caused him to suffer prejudice." People v. Stewart at *3. Since the petitioner has the burden to prove prejudice, any deficiency in counsel's performance that does not result in prejudice must, therefore, necessarily fail. Petitioner goes no distance in establishing that the evidence of robbery was not, in fact, overwhelming. See Theissen v. Knipp. 2016 WL 3512300 (E.D.Cal. 2016).

Under AEDPA and case law principles, as discussed above, to override the findings of the reviewing courts, this court would have to determine that fair minded jurists reviewing the issue would have only one reasonable way to decide it – in favor of the petitioner – and that is not the case here. Pulido v. Grounds, 2015 WL 6123616 *24 (E.D.Cal. 2015). Even if petitioner could be said to have raised a doubt about the propriety of the evidence admission, there could be no finding that the Court of Appeal's conclusions were unreasonable.

B. Claim 2

This claim relates to the court's refusal to allow petitioner's sister, described as a nurse with some psychiatric ward service and with whom he stayed in "close contact," to testify to his

13

mental state in relation to his plea agreement. This court notes that in making his decision the trial judge held a hearing in which he listened to questioning of the potential witness, Glenda Jackson, and ruled that she would not be allowed to testify because he didn't find her qualified as a lay expert insofar as she had no formal training, nor did he find her to be an "intimate acquaintance" since she testified she only saw her brother about two times per month in the years surrounding the charged crime. Based on California Rule of Civil Procedure 352, the trial judge further found that the testimony would merely waste time and confuse the jury. RT 109:17-121:8.

Petitioner argues only that the court abused its discretion insofar as the finding that the refusal to allow Ms. Johnson to testify was "contrary to the intent of [California] Evidence Code section 870,"[2] without any legal citation whatsoever. In addressing this ground, the Third District Court of Appeal found that the trial court's finding as to the "intimate acquaintance" part of the equation was to be upheld. The court focused on the difficulty of defining who was an "intimate" acquaintance of a defendant and the time period at which time "intimacy" was pertinent. The appellate court further found that her testimony as to defendant's babbling and talking to himself, although possibly marginally relevant, "could, as found by the trial court, confuse the jury by "focusing on the tangential issue of defendant's mental health in early 1994" and, therefore held the trial court had the discretion to find Ms. Johnson's testimony "unnecessary." People v. Stewart at *4-5. Further, the trial court acted within its discretion to disallow it under section 352.

////

////

---

[2] This state statute states that "[a] witness may state his opinion as to the sanity of a person when: (a) the witness is an intimate acquaintance of the person whose sanity is in question; (b) the witness was a subscribing witness to a writing, the validity of which is in dispute, signed by the person whose sanity is in question and the opinion relates to the sanity of such person at the time the writing was signed; or (c) the witness is qualified under Section 800 or 801 to testify in the form of an opinion." Section 800 allows opinion testimony when it is "rationally based on the perception of the witness and helpful to a clear understanding of his testimony. Section 801 requires special knowledge, skill, experience, training and education for qualification as an expert who may give opinion evidence.

14

To the extent petitioner is simply challenging a state law evidentiary conclusion, as pointed out in relation to Claim 1, this argument does not state a cognizable claim in habeas corpus.

However, in reading the pro se petition liberally, with respect to the exclusion of evidence which petitioner believes to be important, or even critical, to his defense of rebutting the inference of common scheme or plan, the issue here is not an evidentiary issue per se, but is more properly classified as whether petitioner was denied the ability to present effective evidence of a defense. "State and federal rulemakers have broad latitude under the Constitution to establish rules excluding evidence from criminal trials." Holmes v. South Carolina, 547 U.S. 319, 324 (2006) (quotations and citations omitted); see also Montana v. Egelhoff, 518 U.S. 37, 42 (1996) (holding that due process does not guarantee a defendant the right to present all relevant evidence). This latitude is limited, however, by a defendant's constitutional rights to due process and to present a defense, rights originating in the Sixth and Fourteenth Amendments. Holmes, 547 U.S. at 324. "While the Constitution prohibits the exclusion of defense evidence under rules that serve no legitimate purpose or that are disproportionate to the ends that they are asserted to promote, well-established rules of evidence permit trial judges to exclude evidence if its probative value is outweighed by certain other factors such as unfair prejudice, confusion of the issues, or potential to mislead the jury." Id. at 325–26; see also Egelhoff, 518 U.S. at 42 (holding that the exclusion of evidence does not violate the Due Process Clause unless "it offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental."). The defendant, not the state, bears the burden to demonstrate that the principle violated by the evidentiary rule "is so rooted in the traditions and conscience of our people as to be ranked as fundamental." Egelhoff, 518 U.S. at 47 (internal quotations and citations omitted).
In deciding if the exclusion of evidence violates the due process right to a fair trial or the right to present a defense, the court balances five factors: (1) the probative value of the excluded evidence on the central issue; (2) its reliability; (3) whether it is capable of evaluation by the trier of fact; (4) whether it is the sole evidence on the issue or merely cumulative; and (5) whether it constitutes a major part of the attempted defense. Chia v. Cambra, 360 F.3d 997, 1004 (9th

Cir.2004); Drayden v. White, 232 F.3d 704, 711 (9th Cir.2000). The court must also give due weight to the state interests underlying the state evidentiary rules on which the exclusion was based. See Chia, 360 F.3d at 1006.

Here, the unquestioned ability of state courts to control inadmissible opinions, strongly points to a denial of this claim. As the Court of Appeal pointed out, the ability of a once-in-awhile, percipient witness to offer opinions as to a person's mental stability is very dubious. More importantly, the witness simply testified to the instability of petitioner at the time he entered his plea to the federal robbery convictions -- evidence which we have seen was admitted to demonstrate a common scheme or plan. As respondent argues, however, this assertion goes no meaningful distance toward showing that petitioner was incompetent to enter his federal pleas, *i.e.*, that he did not understand the proceedings or have the ability to assist his counsel when entering into the pleas. The record does not reflect any issue of competency in the federal proceedings—an issue which a court would raise *sua sponte* in the event any significant illness were present. The non-expert in this case had nothing significant to say that would somehow detract from the evidence in this present case. Nor was this evidence capable of evaluation by the trier of fact as there was no testimony of how the trier of fact should evaluate the excluded testimony. Finally, it cannot be said that the thrust of this evidence attacking the "extra" evidence of common plan or scheme was a major part of the defense.

*CONCLUSION*

In light of the foregoing this court must find that there is no ground for a grant of the writ in this case. Accordingly, IT IS THEREFORE FOUND AND RECOMMENDED that:

1. The petition for writ of habeas corpus should be dismissed, with prejudice;

2. This matter should be dismissed ;

3. A Certificate of Appealability should not be issued;

4. The Clerk of the Court should close this file.

These Findings and Recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen (14) days after being served with these findings and recommendations, the parties may file written

16

objections with the court. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The petitioner is advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir.1991).

DATED: February 28, 2018

<u>/s/ Gregory G. Hollows</u>
UNITED STATES MAGISTRATE JUDGE